RUFFIN, C. J., dissenting. *Page 243 
Assumpsit upon the warranty of a female slave to be "sound and healthy." Plaintiff contended that the slave was defective in her vision. The proof tended to show that it was a case of near-sightedness, and the court was asked to instruct the jury that if that was the defect complained of, it was not a case covered by the terms of the warranty. The court declined to give this instruction, and told the jury that although it was a case of near-sightedness, if they believed from the evidence that the slave was thereby rendered incapable to perform the common and ordinary business in the house or field which slaves are taught and expected to perform and are usually required of them, the defect was an unsoundness, and the plaintiff was entitled to recover damages, etc. The jury returned a verdict for the plaintiff, and from the judgment thereon the defendant appealed.
Plaintiff paid a sound (fair) price for the slave, (357) and the jury find that by reason of a defect in her eyesight she was unfitted for the services ordinarily expected of slaves. Plaintiff further endeavored to protect himself by requiring a warranty, in which not merely one word, which is usually considered sufficient, but two words,"sound and healthy," are used, for the purpose of binding the defendant, and protecting the plaintiff from loss. The word "healthy," in its ordinary acceptation, means free from disease or bodily ailment or a state of the system peculiarly susceptible or liable to disease or bodily ailment. The word "sound," when superadded and contrasted to "healthy," in its ordinary acceptation, having reference to animals, means "whole," "right," nothing "wrong," "nothing the matter with it," "free of any defect by which it is unfitted for the services usually performed by animals of the like kind." This definition is derived from the decided cases, in which such is held to be the meaning of the word in its ordinary acceptation when used in reference to animals. Simpson v. McKay, 34 N.C. 142, and see many cases cited by Oliphant on Horses, Law Library. When used in reference to wood or vegetables, or other inanimate substances, "sound" means free of decay or rottenness. When used in reference to animals, and applied to the mind, it means that neither from nature or disease, nor other causes, the mind is incapable of performing its ordinary functions. When applied to the organs of seeing, hearing, smelling, etc., it means that the organ, neither from nature, disease, nor other cause, has any defect which makes it incapable *Page 244 
or unfit to perform the services ordinarily required of it. A horse that has had his eyes knocked out, and has got well, is healthy and free of disease or bodily ailment. But can it be said that it is a sound horse? He has lost the organ of sight, and is less fit for service. When applied to the body or outward structure of an animal, it means that there is no malformation, and that the structure of the body has undergone (358) no change, either from disease or accident, whereby to render it less fit for service. But it does not import that the structure of the body of the animal is perfect and free of defect, for there is no model. Who can say what is perfection in the form of a horse? Some are so formed as to fit them for speed, with light weight; others for heavy burden at a slow pace. Either, put to the service of the other, would sink under it. Some are thick through the chest, others thin. Some carry their heads high, others are "cur-necked." Some have high hips, others are droop-rumped, cat ham'd, with crooked legs, indicating an easy gait to the rider and unfitness for harness. Some are white, others bay, and so on, through all the varieties of forms and color, as if they were so made to suit purchasers. So a slave may be tall or low stature, or bow-legged, or knock-kneed, or stoop-shouldered. In regard to these matters, therefore, the rule of caveat emptor, applies, and purchasers are to consult their own taste or judgment, for there is no model of perfection. But, in regard to an organ — the eye, for instance — there is perfection, and if there be a defect in it, so as to make it unfit for ordinary purposes, the animal is unsound. Near-sightedness, therefore, is an unsoundness, because it is a defect in an important organ. It may be produced by disease or accident, or by looking much at small objects, and may be transmitted from parent to child. In regard to this, a distinction was taken in the argument by Mr. Moore between a defect caused by disease or accident and one from nature, but the distinction is not a sound one. If one sells a blind horse, does it make any difference to the purchaser whether he was born blind or had his eyes knocked out? In this case, where the plaintiff bought a female slave, the unsoundness impaired the value to a greater extent if it was hereditary, (359) because it was more likely to fall upon the issue, than if it had been caused by accident. But it is said by Mr. Moore this negro can see as well as many old negroes, and will it be held that a negro is unsound who can't see as well as he did in the prime of life? Certainly not. When one buys an old negro and takes a warranty of soundness, if the eyes of the negro have not been injured by disease or accident, and are only impaired by the "wear and tear" of age, the purchaser has no right to complain, for the slave is sound, in the ordinary acceptation of the word used in reference to one of that age, because courts, jurors, *Page 245 
purchasers and every one are presumed to know the laws of nature, and contracts are to be construed in reference to such knowledge.